Filed 6/22/21  Arce v. Wal-Mart Associates CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARIO ARCE, | B302349 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. BC676531 |
| WAL-MART ASSOCIATES, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge. Affirmed.

Alexander Morrison + Fehr, Tracy L. Fehr; Panitz Law Group, Eric A. Panitz; and Irma L. Martinez for Plaintiff and Appellant.

LTL Attorneys, David W. Ammons and Tiffany S. Hansen for Defendants and Respondents.

# INTRODUCTION

Plaintiff and appellant Mario Arce (plaintiff) brought the present action against his former employer, Wal-Mart Associates, Inc. (Wal-Mart), and his former supervisor, William Guaracha, alleging mainly that the company terminated his employment because of a physical disability in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.).[1] Plaintiff also asserted claims for failure to engage in the interactive process, failure to accommodate disability, retaliation, age-based harassment, and wrongful employment termination in violation of public policy.

Wal-Mart moved for summary judgment and/or summary adjudication and presented evidence that it terminated plaintiff's employment for a legitimate, nondiscriminatory reason, i.e., he violated company policies and procedures on four occasions within one year. As to plaintiff's disability-related claims, the trial court concluded plaintiff failed to present evidence that Wal-Mart's proffered rationale was either false or a pretext designed to conceal discriminatory animus. The court also concluded that no triable issues of material fact existed as to plaintiff's remaining claims. The court entered judgment in favor of Wal-Mart and plaintiff appeals. We affirm the judgment.

---

[1] All undesignated statutory references are to the Government Code. At times, we refer to Wal-Mart and Guaracha collectively as Wal-Mart.

## FACTS AND PROCEDURAL BACKGROUND

**1.  Plaintiff's Employment and Discipline Record**

Wal-Mart has a "coaching for improvement" policy by which Wal-Mart notifies an employee of a performance issue in writing and instructs the employee regarding proper job performance. The coaching policy provides that an employee is subject to employment termination if the employee receives three written levels of coaching and then receives a fourth written level of coaching within the 12-month period following the third coaching.

Plaintiff worked for Wal-Mart from 2003 to late 2016 as a meat cutter. He violated Wal-Mart policies and procedures on four occasions between January 2016 and December 2016. First, in January 2016, plaintiff violated Wal-Mart's meal and rest break policy by failing to take his legally mandated lunch break before the fifth hour of his shift. He received a written level of coaching in May 2016 relating to this violation and agreed to "make sure to take [his] lunch before [his] 5th hour." Plaintiff repeated the meal break violation less than a month later, in June 2016. He again received a written coaching and agreed to "take lunch on the 4th hour from now on." Plaintiff received a third written coaching on November 7, 2016, purportedly because he failed to remove expired food products from the sales floor during his opening shift. He agreed to "pay more attention to checking the dates item by item." The third coaching record indicated that the next level of action to be taken if plaintiff's performance issues continued was employment termination. Finally, as explained in greater detail below, plaintiff received a fourth write-up after he failed to timely report his workplace injury as required. As this fourth coaching occurred less than a month after his third coaching, plaintiff was eligible for

employment termination under Wal-Mart's "coaching for improvement" policy.

## 2. Age-related Comments in the Workplace

Guaracha, plaintiff's supervisor in the meat department, frequently called plaintiff "hombre viejo," meaning "old man" when translated from Spanish to English, over the course of approximately two years. Plaintiff thought Guaracha used the name in a joking manner and also to be unkind. Although plaintiff said the name-calling made him feel "bad," he did not bring the issue to a supervisor's attention until October 2016, nearly two years after the conduct began. And even then, plaintiff did not want the supervisor to take any action to stop Guaracha's behavior. In explaining his delay in reporting Guaracha's behavior, plaintiff said he "didn't have the chance" to do so earlier. Plaintiff also admitted Guaracha's behavior did not affect his ability to perform his job and did not ever require him to take time off work.

## 3. Plaintiff's Injury and Workers' Compensation Claim

On November 30, 2016, Wal-Mart received a notice that plaintiff had filed a workers' compensation claim. The notice indicated that plaintiff claimed his job caused repetitive stress injury in his wrists. In addition, the notice stated that the injury began two years earlier, in November 2014. Plaintiff filed the workers' compensation claim in mid-November 2016, shortly after he received his third written coaching. He had not seen a doctor regarding the condition at that point, nor had he disclosed his condition to anyone at Wal-Mart.

Plaintiff's department manager, William Ramirez, became aware of the claim on November 30, 2016. The next day, on

December 1, 2016, Ramirez took plaintiff to a medical clinic so that a physician could assess plaintiff's injuries and determine appropriate work restrictions. The assessment stated that plaintiff should be placed on a "modified work" schedule for one week but did not indicate that plaintiff should take time off work. The assessment also recommended that plaintiff limit his use of his right hand and wrist, refrain from pushing, pulling, and lifting more than 15 pounds, and take a five-minute stretch break after every hour of work.

When plaintiff returned from his visit to the medical clinic, he was reassigned to work at the gas station—a position that accommodated his work restrictions. Plaintiff worked at that new job assignment for one day, on December 2, 2016. At the end of plaintiff's workday, Wal-Mart terminated plaintiff's employment because he failed to report his workplace injury within 24 hours, as required.

### 4. The Litigation

In September 2017, plaintiff filed a complaint against Wal-Mart asserting causes of action for disability discrimination (§ 12940, subd. (a)), failure to accommodate disability (§ 12940, subd. (m)), failure to engage in the interactive process (§ 12940, subd. (n)), age-based harassment (§ 12940, subd. (j)(1)), retaliation (§ 12940, subd. (h)), and failure to take reasonable steps to prevent harassment and discrimination (§ 12940, subd. (k)). Plaintiff also named Guaracha as a defendant in the harassment claim. In addition, plaintiff claimed Wal-Mart interfered with his right to medical leave under the California

5

Family Rights Act (§ 12945.2, subd. (t))[2] and that his employment termination violated public policy. Plaintiff alleged he developed work-induced chronic stress injuries to his hand, wrist, right elbow, and upper back that resulted in permanent disability.[3] He further alleged that Wal-Mart discriminated against him due to his disability and failed to engage in the interactive process. In addition, plaintiff contended Wal-Mart retaliated against him due to his request for disability accommodation, his request to take time off in order to have surgery, and his complaints about age-based harassment. Plaintiff sought a minimum of $100,000 in damages, job reinstatement, and punitive damages.[4]

Wal-Mart's answer to the complaint generally denied plaintiff's allegations and asserted a range of affirmative defenses.

---

[2] Although the court granted summary adjudication on plaintiff's medical leave claim, he has not addressed that claim in this appeal. Accordingly, we do not discuss the claim further. (See, e.g., *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

[3] No evidence in the appellate record supports plaintiff's assertion that he is permanently disabled. The parties did not litigate that issue below, however, and we therefore assume for the sake of argument that plaintiff's injury qualifies as a disability under FEHA.

[4] Because we conclude summary judgment was properly granted, we need not (and do not) address the issue of damages.

## 5. Summary Judgment Proceedings

### 5.1. Wal-Mart's Motion for Summary Judgment and/or Summary Adjudication

In late 2018, Wal-Mart filed a motion for summary judgment and/or summary adjudication of all causes of action. Mainly, Wal-Mart asserted that it terminated plaintiff's employment after plaintiff violated company policies and procedures on four occasions in less than 12 months. Because it had a legitimate and nondiscriminatory reason for plaintiff's employment termination, Wal-Mart argued, plaintiff's disability-related claims (discrimination, wrongful termination in violation of public policy, failure to prevent discrimination, and retaliation) failed as a matter of law. As to plaintiff's claims that Wal-Mart failed to engage in the interactive process and to accommodate his disability, Wal-Mart noted that once it learned of plaintiff's disability, it reassigned him to a different job that accommodated his work restrictions.

With respect to plaintiff's age-related harassment and retaliation claims, Wal-Mart and Guaracha acknowledged that Guaracha frequently called plaintiff "hombre viejo," meaning "old man." But they argued the age-related comments were not severe or pervasive enough to constitute harassment, as demonstrated by the fact that plaintiff waited for two years before reporting the issue and, even then, did not want a supervisor to intervene. Finally, Wal-Mart asserted that plaintiff's claim for punitive damages failed as a matter of law because even if any unlawful conduct had occurred, there was no evidence that any corporate officer, director, or managing agent was involved.

### 5.2. Plaintiff's Opposition

With respect to his disability-related claims, plaintiff argued that Wal-Mart's asserted reason for his employment termination was pretextual. He repeatedly emphasized the temporal proximity between the time Wal-Mart learned of his workers' compensation claim and disability (November 30) and the date Wal-Mart terminated his employment (December 2). Plaintiff also presented evidence that he had received several positive performance reviews during his employment at Wal-Mart, most recently in August 2016. In addition, plaintiff argued that the 24-hour injury reporting requirement cited as the basis for his employment termination did not exist. He claimed his supervisor targeted him for employment termination because his production had decreased recently—an issue he asserted was caused by his disability.

Regarding the harassment claim, plaintiff noted Wal-Mart failed to investigate the harassment complaint he made in October 2016, in violation of its own policy. And it was undisputed that Guaracha had harassed plaintiff for approximately two years. Finally, and regarding his retaliation claim, plaintiff argued he engaged in two forms of protected activity—filing a workers' compensation claim and reporting harassment in the workplace—and was fired shortly thereafter, leading to an inference of retaliatory conduct by Wal-Mart.

### 5.3. Wal-Mart's Reply

Wal-Mart acknowledged that its policy required employees to report workplace injuries "immediately" rather than "within 24 hours" as it originally contended and as stated on plaintiff's separation form. Nevertheless, Wal-Mart asserted that plaintiff

failed to offer any evidence that Wal-Mart's legitimate and nondiscriminatory explanation for his employment termination was pretextual. And, Wal-Mart noted, temporal proximity between the adverse employment action and discovery of plaintiff's disability was insufficient to establish pretext.

With respect to plaintiff's nondisability claims, Wal-Mart reiterated its prior arguments.

**6.      Summary Judgment Ruling**

The court issued a thorough and well-reasoned order granting summary judgment in favor of Wal-Mart on July 25, 2019.

With respect to plaintiff's disability discrimination claim (§ 12940, subd. (a)), the court found plaintiff had a history of poor job performance, as evidenced by plaintiff's multiple policy violations during 2016, that caused Wal-Mart to terminate his employment. The burden of proof then shifted to plaintiff to offer evidence of pretext, but plaintiff failed to offer anything other than temporal proximity between the date Wal-Mart learned of his disability and the date it terminated his employment. The court noted that such evidence may be sufficient to establish a prima facie case of pretext but is generally insufficient, standing alone, to create a triable issue of material fact on that issue. And because plaintiff's disability discrimination claim failed, his dependent claims of wrongful termination in violation of public policy and failure to take reasonable steps to prevent disability discrimination also failed as a matter of law. Plaintiff's claim for retaliation based on disability failed for the same reason—plaintiff's inability to establish that he was fired for an illegitimate, pretextual reason.

The court also found Wal-Mart had engaged in the interactive process and accommodated plaintiff's physical limitations. Specifically, it was undisputed that the day after one of plaintiff's supervisors became aware of plaintiff's injury, he took plaintiff to a clinic for a medical evaluation. When plaintiff returned to work, he was assigned to a different, lighter duty job that conformed to the clinic's suggested duty modifications. Accordingly, the court found Wal-Mart was entitled to summary adjudication on those two claims.

As to plaintiff's age-based harassment claim, the court noted that in order to be actionable, the harassment must be severe, i.e., the workplace must be "permeated with 'discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " But plaintiff admitted that although Guaracha's name-calling made him feel "bad," it did not impact his work at all. For that reason, the court concluded the harassment did not rise to an actionable level and Wal-Mart was therefore entitled to summary adjudication on the harassment claim as well as the dependent claim for failure to take reasonable steps to prevent harassment.

Because the court found that summary adjudication was appropriate on each of plaintiff's causes of action, the court granted Wal-Mart's motion for summary judgment.

7.    **Entry of Judgment and Appeal**

The court entered judgment in favor of Wal-Mart on September 6, 2019. Plaintiff timely appeals.

10

## DISCUSSION

Plaintiff challenges the court's summary adjudication of each of his claims. We address his arguments in turn and conclude the court's rulings are sound.

### 1.    Standard of Review

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler,* at p. 768.) "In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes

11

facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

2. **The court properly granted Wal-Mart's motion for summary adjudication on plaintiff's disability-related claims.**

   2.1. **Legal Analysis of Workplace Discrimination Claims**

   " 'In California, courts employ at trial the three-stage test that was established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802, to resolve discrimination claims ... . [Citation.] At trial, the employee must first establish a prima facie case of discrimination, showing " ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion ... .' " ' " ' (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2 (*Reid*).) A prima facie claim arises 'when the employee shows (1) at the time of the adverse action [he was a member of a protected class], (2) an adverse

12

employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job' (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1003, fn. omitted (*Hersant*)), and (4) the adverse action occurred 'under circumstances which give rise to an inference of unlawful discrimination.' (*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253.) 'Once the employee satisfies this burden, there is a presumption of discrimination, and the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. [Citation.] A reason is " 'legitimate' " if it is "facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination." [Citation.] If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination.' (*Reid*, at p. 520, fn. 2, italics omitted.)

"In the context of a defense motion for summary judgment, '[a]ssuming the complaint alleges facts establishing a prima facie case that unlawful disparate treatment occurred, the initial burden rests on the employer (moving party) to produce substantial evidence (1) negating an essential element of plaintiff's case or (2) (more commonly) showing one or more legitimate, nondiscriminatory reasons for its action against the plaintiff employee ... . [¶] ... The burden then shifts to the plaintiff employee (opposing party) to rebut defendant's showing by producing substantial evidence that raises a rational inference that discrimination occurred; i.e., that the employer's stated neutral legitimate reasons for its actions are each a "pretext" or cover-up for unlawful discrimination, or other action contrary to

13

law or contractual obligation.' (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2016) ¶¶ 19:728 to 19:729, p. 19-121, italics omitted.) By applying *McDonnell Douglas*'s shifting burdens of production in the context of a motion for summary judgment, ' "the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury." ' [Citation.]" (*Nakai v. Friendship House Assn. of American Indians, Inc.* (2017) 15 Cal.App.5th 32, 38–39 (*Nakai*).)

### 2.2. Plaintiff failed to demonstrate a dispute of material fact regarding his disability discrimination claim.

We first address plaintiff's cause of action for discrimination on the basis of physical disability under section 12940, subdivision (a) and consider each of the three burden-shifting stages of the *McDonnell Douglas* test discussed above: whether plaintiff alleged a prima facie case of discrimination, whether Wal-Mart produced substantial evidence that it terminated plaintiff's employment for a legitimate, nondiscriminatory reason, and whether plaintiff presented substantial evidence that the stated reason for his employment termination was pretextual and intended to conceal a discriminatory motive.

### 2.2.1. Plaintiff alleged a prima facie case of discrimination on the basis of physical disability.

Plaintiff's first cause of action alleges a prima facie case of discrimination under FEHA, which prohibits an employer from discharging a person from employment because of a physical disability. (§ 12940, subd. (a).) Plaintiff alleged (1) he has a

14

physical disability, (2) Wal-Mart terminated his employment, (3) he was performing his job adequately, and (4) Wal-Mart's explanation for his employment termination is pretextual.

### 2.2.2. Wal-Mart produced substantial evidence that it terminated plaintiff's employment for a legitimate, non-discriminatory reason.

When an employee satisfies his or her initial burden to make a prima facie case, " 'the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. [Citation.] A reason is " 'legitimate' " if it is "facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination." [Citation.] If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination.' [Citation.]" (*Nakai, supra*, 15 Cal.App.5th at pp. 38–39.)

In support of its motion, Wal-Mart proffered a legitimate, nondiscriminatory reason for terminating plaintiff's employment, namely, that plaintiff violated company policies and procedures on four occasions within one year. As explained in detail above, plaintiff failed to take mandatory meal breaks on two occasions— once in January 2016 and once in June 2016. He received a written level of coaching on both occasions. In early November 2016, plaintiff received a written level of coaching after he purportedly failed to remove expired products from the sales floor. Under Wal-Mart's employee discipline policy, plaintiff was eligible for employment termination if he were to receive a written level of coaching after he violated company policy on a fourth occasion within the next year. And in fact, plaintiff

15

received a written level of coaching less than a month later, after he failed to report his workplace injury in a timely manner.

Because Wal-Mart offered substantial evidence that it terminated plaintiff's employment for a legitimate, nondiscriminatory reason, we now consider whether plaintiff has adduced substantial, specific evidence that raises a rational inference of falsity and/or pretext sufficient to create a triable issue of material fact.

### 2.2.3. Plaintiff failed to offer any substantial evidence of falsity and/or pretext.

Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it "remains subject to careful scrutiny." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) The employee's "subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*Ibid.*) The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, "an actual causal link between prohibited motivation and termination." (*Id.* at pp. 433–434.)

To show that an employer's reason for termination is pretextual, an employee " 'cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.' " (*Hersant, supra*, 57 Cal.App.4th at p. 1005.) To meet his or her burden, the employee " 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

16

"unworthy of credence,' ' " and hence infer " 'that the employer did not act for [the asserted] nondiscriminatory reasons.' " (*Ibid.*) "[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility ... , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally.*" (*Guz, supra*, 24 Cal.4th at p. 358; *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159–1160.)

As we understand it, plaintiff claims that the third and fourth instances of coaching were "unlawful" and that therefore his eventual employment termination was also "unlawful." With respect to the third coaching, plaintiff theorizes that his supervisor was dissatisfied with his level of productivity. And rather than directly address that issue through Wal-Mart's "coaching for improvement" policy, his supervisor instead disciplined plaintiff for failing to remove expired product from the sales floor—even though he knew the product was not expired and the real problem was that the gun used to apply the expiration date to packages had malfunctioned. Plaintiff further argues that but for the third coaching, plaintiff would never have received a fourth coaching and therefore Wal-Mart would not have had grounds to terminate his employment.

The facts cited by plaintiff, if true, do not create a dispute of material fact regarding his disability discrimination claim because, as noted, the third coaching took place on November 7, 2016—one week *before* plaintiff filed his workers' compensation

17

claim and *well before* anyone at Wal-Mart had been advised of plaintiff's disability.[5] " 'An adverse employment decision cannot be made "because of" a disability, when the disability is not known to the employer.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1008 (*Scotch*).)

Plaintiff also argues that the fourth coaching, which was based on his failure to timely report a workplace injury, is "direct evidence" of disability discrimination. Here, plaintiff asserts that Wal-Mart disciplined him for "reporting his disability too late for Walmart's liking." That is not precisely true, as plaintiff was disciplined for failure to report a *workplace injury*—not a disability.

In addition, plaintiff contends that Wal-Mart's justification for employment termination was a pretext because Wal-Mart does not have a policy requiring employees to report workplace injuries within 24 hours. Rather, Wal-Mart's policy requires employees to report workplace injuries "immediately." But it is immaterial whether Wal-Mart's policy required employees to report injuries "immediately" or within 24 hours. In either case, plaintiff's two-year delay in reporting the onset of his injury failed to comply with Wal-Mart's policy.

Finally, even if disciplining plaintiff for failing to report his injury was not in compliance with Wal-Mart's injury reporting policy, that fact does not raise a triable issue of material fact

---

[5] To the extent plaintiff suggests that he was disciplined for "manifestations of his disability," i.e., unsatisfactory productivity, there is no evidence in the record demonstrating either that plaintiff's disability led to reduced job performance or that he was ever disciplined on any basis relating to productivity.

regarding disability discrimination. As noted above, an employee " 'cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.' " (*Hersant, supra*, 57 Cal.App.4th at p. 1005.)

### 2.3. Plaintiff's disability-related claims also fail.

Plaintiff's complaint includes two claims that are dependent upon the success of his disability discrimination claim: the sixth cause of action for failure to take reasonable steps to prevent discrimination (§ 12940, subd. (k)) and the eighth cause of action for wrongful employment termination in violation of public policy. The court properly granted summary adjudication on these two claims as well.

Where, as here, a plaintiff cannot establish a claim for discrimination under section 12940, subdivision (a), the employer as a matter of law cannot be held responsible for failing to prevent discrimination: " ' "[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen … ." ' (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 288–289.)" (*Featherstone, supra*, 10 Cal.App.5th at p. 1166.) Plaintiff does not dispute that his failure to prevent discrimination claim is derivative of his disability discrimination claim. Thus, because plaintiff cannot establish his underlying cause of action for disability discrimination, he cannot maintain a derivative claim for violation of section 12940, subdivision (k).

Plaintiff's wrongful employment termination claim also fails. Plaintiff's eighth cause of action is pleaded as a common law claim for wrongful termination in violation of public policy.

19

Specifically, plaintiff alleged that his employment was wrongfully terminated under section 12940, subdivision (a), because of his disability. But under California law, if an employer did not violate FEHA, an employee's claim for wrongful employment termination in violation of public policy necessarily fails. (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 272–273; *Featherstone, supra*, 10 Cal.App.5th 1150, 1169.) The court's summary adjudication of this claim was therefore proper.

3. **The court properly granted summary adjudication as to plaintiff's claims for failure to engage in the interactive process and failure to accommodate disability.**

Under section 12940, subdivision (n), an employer must "engage in a timely, good faith, interactive process with the employee ... to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee ... with a known physical or mental disability ... ." (§ 12940, subd. (n).) " 'The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively.' " (*Scotch, supra,* 173 Cal.App.4th at p. 1013.) Both the employer and the employee are responsible for participating in the interactive process. But " '[w]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, ... the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.' " (*Ibid.*)

20

Also, under section 12940, subdivision (m), an employer must provide a "reasonable accommodation for the known physical or mental disability of an applicant or employee." An employer's duty to reasonably accommodate an employee's disability is not triggered until the employer knows of the disability. (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1252–1253 (*Avila*).) "[A]n employer 'knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation.' " (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 887.) "Generally, ' "[t]he employee bears the burden of giving the employer notice of the disability." ' " (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222.) " ' "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." ' " (*Avila,* at pp. 1252–1253.)

As noted *ante*, plaintiff never directly informed anyone at Wal-Mart that he had a disability which required accommodation. And the day after plaintiff's supervisor learned that plaintiff claimed to be injured, he took plaintiff to a medical clinic for an evaluation. It is also undisputed that as soon as plaintiff returned from the medical clinic with a diagnosis and recommended work restrictions, plaintiff was reassigned to a light duty job that accommodated his work restrictions.

Plaintiff argues that Wal-Mart did not engage in the interactive process and did not accommodate plaintiff's disability because plaintiff's supervisor learned of plaintiff's claimed injury

21

on November 30, 2016 but, rather than immediately changing plaintiff's job assignment, his supervisor waited until the following day to take plaintiff to a doctor. Plaintiff cites no legal authority, however, suggesting that a one-day delay in securing a doctor's appointment is unreasonable per se or that Wal-Mart was required to immediately reassign plaintiff to another job in the absence of a medical diagnosis and recommendation for appropriate accommodations. "Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; see also *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [contention waived because "[a]ppellant did not formulate a coherent legal argument nor did she cite any supporting authority"].)

Plaintiff also urges that if Wal-Mart had properly engaged in the interactive process, it "would have made clear to Walmart that [plaintiff]'s slowed production was due to his disability" and "would have revealed a need to audit [plaintiff]'s performance and discipline record to make sure his disability was not held against him. Such a process would have revealed the discriminatory nature of the third coaching and prevented [plaintiff]'s termination." As we have already explained, however, the third coaching took place on November 7, 2016—one week *before* plaintiff filed his workers' compensation claim and several weeks before anyone at Wal-Mart knew of plaintiff's disability.

22

Finally, plaintiff claims that Wal-Mart terminated his employment in order to avoid accommodating his disability. He cites no evidence supporting that inference, however, and none appears in the appellate record.

4.    **The court properly granted summary adjudication on plaintiff's harassment claim.**

Plaintiff contends triable issues of material fact exist regarding his age-based harassment claim. Section 12940, subdivision (j), defines "unlawful employment practice" to include harassment in the workplace based on age. " 'Under the statute "harassment" in the workplace can take the form of "discriminatory intimidation, ridicule and insult" that is " ' "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ' " [Citations.] Moreover, harassing conduct takes place "outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." (*Reno v. Baird* (1998) 18 Cal.4th 640, 646 … .) "Thus, harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706 … .)' (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 951, [italics omitted] … .)" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 869 (*Serri*).)

" 'Whether the conduct of the alleged harassers was sufficiently severe or pervasive to create a hostile or abusive working environment depends on the totality of the circumstances. " 'These may include the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " [Citations.] " 'Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or roughhousing ... and conduct [that] a reasonable person in the plaintiff's position would find severely hostile or abusive.' " [Citations.] As in sex-based harassment claims, "[t]he plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's [ ] work performance and would have seriously affected the psychological well-being of a reasonable employee and that [he or she] was actually offended." [Citations.]' (*Rehmani, supra*, 204 Cal.App.4th at pp. 951–952.)" (*Serri, supra*, 226 Cal.App.4th at p. 870.)

Here, it is undisputed that Guaracha called plaintiff "hombre viejo" on a near-daily basis. Plaintiff thought Guaracha was joking but also intended to be mean, and Guaracha's comments did make plaintiff feel "bad." Thus, although the conduct was frequent and offensive to some degree, it was limited to name-calling and did not involve any threatening behavior, physical intimidation, or other hostility. Plaintiff's claim fails, however, on the issue of severity. Plaintiff admitted that Guaracha's comments had no impact on his work—an important indicator regarding severity and hostility in the workplace. Further, plaintiff waited for two years before informing anyone at Wal-Mart about Guaracha's conduct and even then, he did not want any action taken to stop Guaracha's behavior. In light of these facts, we conclude no triable issue exists as to whether the

24

age-based harassment was sufficiently severe or pervasive as to alter the conditions of plaintiff's employment.

Because plaintiff's harassment claim fails, his dependent claim of failure to take reasonable steps to prevent harassment also fails. (See *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314 [noting a plaintiff cannot recover for failure to take steps to prevent discrimination or harassment unless actionable discrimination or harassment actually occurred].)

**5. The court properly granted summary adjudication on plaintiff's retaliation claim.**

Plaintiff contends triable issues of fact exist regarding his claim that he was retaliated against for reporting a disability and complaining about age-based harassment. To establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 814–815.)

Plaintiff asserts that "there is a clear causal link between the protected activities and Walmart's adverse actions." Specifically, plaintiff emphasizes that Wal-Mart terminated his employment just two days after learning that he had a disability which required accommodation. He asserts, therefore, that he "was entitled to an inference of retaliation due to temporal proximity alone." The legal authority he cites, however, merely confirms that temporal proximity between protected activity and an adverse employment action may be sufficient to establish a prima facie case of retaliation. (E.g., *Flait v. North American*

*Watch Corp.* (1992) 3 Cal.App.4th 467, 476–478 [analyzing prima facie showing of retaliation]; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615 [same].) The cited cases do not stand for the proposition that temporal proximity, standing alone, is sufficient to withstand summary adjudication under California law.

Plaintiff also contends that Wal-Mart's failure to investigate his harassment claim provides additional evidence of retaliatory motive. As plaintiff suggests, Wal-Mart has a policy requiring it to investigate an employee's claim of workplace harassment and it is undisputed that Wal-Mart did not investigate plaintiff's complaint. Plaintiff then claims that a "failure to conduct a good faith and reasonable investigation is sufficient to show pretext." The cases plaintiff cites, *Cotran v. Rollins Hudig Hall Internat., Inc.* (1988) 17 Cal.4th 93, 95 (*Cotran*) and *Kotla v. Regents of University of California* (2004) 115 Cal.App.4th 283, 294, fn. 6 (*Kotla*), do not assist him here.

In *Cotran,* our high court held that when an employee hired under an implied agreement not to be dismissed except for "good cause" is fired for misconduct and challenges the termination in court, the role of the jury is not to decide whether the misconduct occurred, but whether employer had reasonable grounds for believing that the misconduct occurred and otherwise acted fairly. (*Cotran, supra*, 17 Cal.4th at p. 107.) The court's analysis suggests that in evaluating the reasonableness of an employer's belief, a jury might consider whether the employer conducted a good faith and reasonable investigation. That issue is not presented here and, in any event, *Cotran* does not hold, as plaintiff asserts, that "[t]he failure to conduct a good faith and

26

reasonable investigation is sufficient to show pretext" in an employment discrimination case.

*Kotla* is similarly inapplicable. There, the plaintiff alleged that her employer had wrongfully terminated her employment for retaliatory reasons. At the jury trial, the court admitted testimony by the plaintiff's human resources expert suggesting that certain actions by the employer were "indicators" of a retaliatory motive. The Court of Appeal concluded the testimony was improper opinion testimony on the ultimate factual issues. (*Kotla, supra*, 115 Cal.App.4th at pp. 289–291.) Citing a footnote in the opinion, plaintiff contends *Kotla* establishes that "[e]vidence of an employer failing to follow its own procedures is also sufficient to demonstrate pretext." Plaintiff is wrong. The footnote cited by plaintiff states: "We fashion no general rule here precluding the use of human resources experts in employment cases. We are concerned solely with Dr. Finkelman's testimony that the facts in evidence were indicators of or had a tendency to show retaliation. Expert testimony on predicate issues within the expertise of a human resources expert is clearly permissible. For example, evidence showing (or negating) that an employee's discharge was grossly disproportionate to punishments meted out to similarly situated employees, or that the employer significantly deviated from its ordinary personnel procedures in the aggrieved employee's case, might well be relevant to support (or negate) an inference of retaliation. Opinion testimony on these subjects by a qualified expert on human resources management might well assist the jury in its factfinding." (*Id.* at p. 294, fn. 6.) The court's footnote is dicta and, as is evident, merely suggests that an employer's compliance with its internal policies might be relevant on the issue of retaliation. But the

27

opinion does not hold, as plaintiff claims, that such evidence is conclusive—or even sufficient to create a triable issue as to an employer's motive for retaliation.

### 6. Wal-Mart's Expanded Deposition Excerpts in Support of its Reply Papers

Finally, plaintiff argues the court erred in overruling his objections to "new evidence" submitted by Wal-Mart with its summary judgment reply papers. Specifically, Wal-Mart submitted several short excerpts from the depositions of William Ramirez, Miguel Gomez, and Mario Perez relating to plaintiff's theory that his third coaching was based on productivity-related concerns rather than, as stated, his failure to remove expired products from the sales floor.

We would typically review a court's evidentiary rulings for an abuse of discretion. (See, e.g., *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.) Here, however, it is unnecessary to undertake a substantive review of the court's decision because the evidence identified by plaintiff is not relevant to our analysis of the issues presented in this appeal. Further, and in any event, plaintiff has not shown that any error in the court's evidentiary rulings was prejudicial. And it is axiomatic that a judgment may not be reversed on appeal unless "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice." (Cal. Const., art. VI, § 13.)

## DISPOSITION

The judgment is affirmed. Wal-Mart Associates, Inc. and William Guaracha shall recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.